[No. 11493.   Department One. — August 17, 1886.]

## GEORGE LAWRENCE ET AL., APPELLANTS, *v.* WARREN GREEN ET AL., RESPONDENTS.

COMMON CARRIER — NEGLIGENCE — STAGE-COACH — BREAKING OF WHEEL — EVIDENCE. — The breaking of a wheel of a stage-coach is *prima facie* evidence that the wheel was defective, and in the absence of evidence showing that it was sound, or that the defect was latent, and could not be discovered by examination, is sufficient to establish the negligence of the carrier, and its liability for an injury to a passenger occasioned thereby.

ID. — BURDEN OF PROOF — DEFENDANT MUST REBUT PRIMA FACIE NEGLIGENCE. — In an action to recover for such an injury, after the plaintiff had shown that the accident was caused by the breaking of the wheel, the burden of proof was on the defendant to show that the wheel was not defective, or if so, that the defect did not cause the accident.

ID. — CONDUCT OF PERSON IN APPARENT DANGER. — A stage-coach proprietor is liable for an injury to a passenger caused by the negligent overturning of the coach, notwithstanding the passenger contributed to the injury by his own rashness, imprudence, or indiscretion at the time of the accident, if he did only what a person of ordinary prudence would probably have done under the same circumstances.

APPEAL from a judgment of the Superior Court of Sierra County.

The action was brought to recover damages for personal injuries alleged to have been caused by the overturning of a stage-coach. The further facts are stated in the opinion of the court.

LXX. CAL.—27

*Van Clief & Wehe*, for Appellants.

*Hundley, Gale & Ford*, for Respondents.

McKINSTRY, J.—The complaint, after stating other facts, avers: "That whilst she, said Mary A. Lawrence, was said passenger and was being carried on said coach down the Goodyear Bar hill, between said Mountain House and Goodyear Bar, at a point on said road, . . . . by and through the carelessness and negligence of the defendants [proprietors of the coach], said coach *broke down* and was overturned, by means whereof the said Mary A. Lawrence was greatly bruised and injured," etc.

It was alleged in the answer that "said stage-coach had reached a point on said road a short distance above said Goodyear's Bar, and while making a short and abrupt turn therein, said coach slid or lurched to the left, and the nigh or left hind wheel was dished or broken. . . . . That defendants do not own or have the control or any management of said road."

The bill of exceptions shows that when the accident occurred the coach "was being driven down grade of a mountain road more than ordinarily steep, using the brake, and upon more than an ordinary curve therein to the left and toward the mountain, about four miles down said grade, wherein the track for the wheels on the left side of the road was about one foot lower than the track for the wheels on the right side thereof; but the condition of this part of the road when the accident happened had not been changed in any respect during the period of six months next before the time of the accident in question here, and during all of which period of six months the defendants had driven their coaches over it daily, except one day in each week, and had actual notice of its condition during that period and at the time of the accident; and D. P. Cole, one of the defendants, testified that for some time before the accident he had considered it a dangerous part of the road."

The bill of exceptions does not show the pace or rapidity with which the horses were being driven. The evidence and the admission in the answer that the immediate cause of the overturn was the breaking of the wheel established *prima facie* that the wheel was defective. (*Christie* v. *Griggs*, 2 Camp. 79; *Dawson* v. *Manchester R. Co.*, 5 L. T., N. S., 682; Shearman & Redfield on Negligence, sec. 268, note.) There was no evidence that the breaking was caused by " heating," or that the defect in the wheel was *latent*, or that it had been examined without discovery of the defect.

The occurrence of an injury through a defect in the vehicle is at least *prima facie* evidence of negligence on the part of the carrier. (Shearman & Redfield on Negligence, sec. 268.) The carrier must have carriages adequate to the work to which they are subjected, and must see that they are kept in due repair. (Wharton on Negligence, secs. 628, 629.) But the carrier is not liable for damages incurred through latent defects which could not have been discovered by examination, and which are not traceable to any want of good business diligence in the manufacturer. (Id. 631.)

The negligence of the defendants was established *prima facie* by proof that the wheel broke, and the coach was thus overturned, and there was no evidence to overcome the *prima facie* case; no evidence that the wheel was sound, or that the defect was *latent*. As the case was presented, was the court authorized to charge the jury upon the hypothesis that the accident would have happened if there had been no defect in the wheel? The fact that the road was a foot lower on the inner side did not perhaps prove nor tend to prove that the wheel was a good wheel. It left the unsoundness of the wheel still uncontested, and simply showed that the unsound wheel broke when subjected to the strain or to the slide or lurch of the coach on the uneven ground. If the condition of the road was merely sufficient to create a suspicion that

a sound wheel might have been broken under the circumstances, the jury would not be justified in acting upon a mere surmise or conjecture of the existence of a possible fact of which there was no real evidence.

But even if it should be conceded that evidence that one side of the road was lower than the other, and that the coach lurched toward the lower side, tended to overcome the *prima facie* case of the plaintiff, it was for the defendants to overcome it.

The court charged the jury: "The defendants in this class of actions are not bound to prove just how the accident occurred; they must prove, however, by a preponderance of testimony, that it was not the result of their carelessness or ignorance."

The defendants were not bound to prove anything in the first instance. But when the plaintiff had shown *prima facie* that the accident was caused by the defective wheel, the burden was cast on the defendants to show that the wheel was not defective, or that the defective wheel did not cause the overthrow of the coach. It was for them to prove that the wheel was not in fact defective, or that the defect was latent, or at least that the cause was something entirely independent of the wheel, and one for which they were not responsible. In *Boyce* v. *Cal. Stage Co.*, 25 Cal. 468, the court said: "The fact that the coach did overturn is all that he [plaintiff] need establish in order to recover for such injuries as he may have sustained. In order to rebut this presumption of negligence, the defendant must show that the overturning was the result of inevitable casualty, . . . . for the law holds him responsible for the slightest negligence," etc. "In doing this, the defendant must necessarily explain how the overturning occurred, and if he fails to do this the presumption of negligence remains." (See also *Fairchild* v. *Cal. Stage Co.*, 13 Cal. 599.)

Here not only did the plaintiff prove the overturning of the coach, but the immediate cause of the overturning

is *admitted*. The defendants could not overcome the plaintiff's case, and show that the accident was not the result of their carelessness or negligence, except by proving how the accident did occur, and that it did not occur by reason of a defect in the wheel, or that such defect was latent. But the court's charge was, that defendants need not prove how it occurred, but assumed that, as against the plaintiff's case, they could show their irresponsibility in some other way.

The court below instructed the jury: "If you believe from the evidence that the plaintiff rashly or imprudently, and of her own fault, leaped from the stage-coach, and thereby caused or contributed toward the injury complained of, your verdict should be for the defendants." "When a party has been injured, and such injury was caused or contributed to by his own rashness, imprudence, or *indiscretion*, he is not entitled to recover damages for such injury. A coach proprietor is certainly not responsible for the rashness or imprudence of his passenger." "It is not sufficient to constitute contributory negligence that the plaintiff's own act contributed to her injury; but it must also appear that she so contributed by her own fault, or by neglecting to take ordinary care of her own personal safety."

A passenger ought not to be deemed guilty of contributory negligence when he takes such risk as *under the same circumstances* a prudent man would take. (Shearman & Redfield on Negligence, sec. 282.) And when the circumstances are such as would deprive a person of ordinary prudence of his self-possession, it is not to be expected that he will have all his mental faculties perfectly at his command. Speaking of the position of the plaintiff in *Robinson* v. *W. P. R. R. Co.*, 48 Cal. 421, the court said: "Startled and alarmed as she doubtless was by the imminent peril of her position, it would be asking more than should be required of an ordinarily prudent

and reasonable person to demand that she should exercise the soundest discretion in her efforts to escape."

If the case showed that the plaintiff encountered no danger from the overturning of the coach, and that an ordinarily prudent person must have known that there was no danger, but that she gave way to fright for which there was no real or apparent cause, it may be that her act in leaping from the coach would be held to be contributory negligence. The law, however, must select a standard by which to estimate the conduct of one in apparent danger, and selects as a standard the probable conduct of a person of ordinary prudence under the same circumstances. Applied to the facts of this case, the hypothesis concedes that the plaintiff was in some peril, and in such degree of peril that she may have acted in a manner which in the light of "the wisdom which comes after the fact" was not the wisest. The jury, unenvironed by the threatening circumstances which surrounded the plaintiff, may have believed that if she had remained in her place she would not have been seriously injured, or injured at all.

Would a person of ordinary prudence and courage have jumped from the coach ? It may be claimed that this question was implied in the instructions given; that she was not guilty of a *fault* if she acted as a person of ordinary courage and prudence would have acted. The jury were told broadly that a coach proprietor is never responsible for the imprudence of his passengers. And they were also told in effect that if plaintiff was indiscreet, if she was not prudent, sagacious in adapting means to the end,—her personal safety,—if she was not circumspect and wisely cautious, she could not recover. The real question was, whether, assuming her to be ordinarily reasonable and prudent, the circumstances were so alarming as to deprive her in a degree of her ordinary reason and prudence, and to induce her instinctively to seek safety by an act which, although not

such as the jury might believe to be prudent or *discreet*, was such as the generality of persons would have adopted in the dilemma in which she was placed.

Judgment reversed and cause remanded.

Ross, J., and MYRICK, J., concurred.

Hearing in Bank denied.